Sophia Rios, SBN 305801
**BERGER MONTAGUE PC**
401 B Street, Suite 2000
San Diego, CA 92101
Tel. 619.489.0300
Fax 215.875.4604
srios@bm.net

Sylvia Bolos*, MI Bar #78715
Hans Lodge*, MN Bar #0397012
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 284-5193
Facsimile: (612) 584-4470
sbolos@bm.net
hlodge@bm.net
*Pro Hac Vice to be requested*

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| JOHN JOSEPH VENTIMIGLIA,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION, LLC; AND KIA MOTORS FINANCE COMPANY,<br><br>Defendants. | Case No. 22-cv-00271<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, *ET SEQ.,* AND CALIFORNIA INVESTIGATIVE CONSUMER REPORTING AGENCIES ACT, CAL. CIVIL CODE § 1786, *ET SEQ.*<br><br>JURY TRIAL DEMANDED** |

1.    John Joseph Ventimiglia ("Plaintiff"), by and through his undersigned counsel, brings this Complaint against Equifax Information Services, LLC ("Defendant Equifax" or "Equifax"), Experian Information Solutions, Inc. ("Defendant Experian" or "Experian"), Trans Union, LLC ("Defendant Trans Union" or "Trans Union") (collectively, the "credit bureau defendants"), and Kia Motors Finance Company ("Defendant Kia" or "Kia") (collectively, the "Defendants") for actual, statutory, and punitive damages, costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.* and the California Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civil Code §§ 1786, *et seq.*

## PRELIMINARY STATEMENT

2.    This is an action for statutory, actual, and punitive damages, costs, and attorney's fees brought pursuant to the FCRA, 15 U.S.C. §§ 1681, *et seq.* ("FCRA") and the ICRAA, Cal. Civil Code §§ 1786, *et seq.*

3.    The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, ***accuracy***, relevancy, and proper utilization of such information." 15 U.S.C. § 1681 (emphasis added). In furtherance of its underlying purposes, the FCRA sets out requirements and obligations that consumer reporting agencies, § 1681i, and their furnishers of information, § 1681s-2(b), must follow when consumers dispute the accuracy of the information reported in their credit reports.

4.    This case concerns Defendants' inaccurate reporting of numerous late automobile loan payments on Plaintiff's credit reports, all of which he paid timely.

5.    Plaintiff put the Credit Bureau Defendants on notice when he disputed this erroneous reporting with Equifax, Experian, and Trans Union. However, Experian and Trans Union continued to report the inaccurate information on Plaintiff's credit reports thereafter.

6.     Accordingly, Plaintiff brings claims against Defendants Equifax, Experian, and Trans Union for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports in violation of the FCRA, 15 U.S.C. § 1681e(b), and the ICRAA, Cal. Civ. Code § 1786.20.

7.     Plaintiff also brings claims against Defendants Experian and Trans Union for their failure to fulfill their reinvestigation duties in violation of the FCRA, 15 U.S.C. § 1681i, and ICRAA, Cal. Civ. Code § 1786.24.

8.     Plaintiff also brings claims against Defendant Kia for failing to fully and properly investigate Plaintiff's disputes and to review all relevant information provided by the consumer reporting agencies in violation of the FCRA, 15 U.S.C. § 1681s-2(b).

## THE PARTIES

9.     Plaintiff John Joseph Ventimiglia ("Plaintiff") is a natural person who resides in the City of Huntington Beach, State of California, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c) and Cal. Civ. Code § 1786.20(b).

10.     Defendant Equifax Information Services, LLC ("Defendant Equifax" or "Equifax") is a foreign limited liability company authorized to do business in the State of California, including in the Central District.

11.     Defendant Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Defendant Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

12.     Defendant Equifax is an "investigative consumer credit reporting agency" as defined by Cal. Civ. Code § 1786.2(d).

13.     Defendant Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") is a foreign corporation authorized to do business in the State of California, including in the Central District.

14.     Defendant Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Defendant Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

15.     Defendant Experian is an "investigative consumer credit reporting agency" as defined by Cal. Civ. Code § 1786.2(d).

16.     Defendant Trans Union, LLC ("Defendant Trans Union" or "Trans Union") is a foreign limited liability company authorized to do business in the State of California, including in the Central District.

17.     Defendant Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Defendant Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

18.     Defendant Trans Union is an "investigative consumer credit reporting agency" as defined by Cal. Civ. Code § 1786.2(d).

19.     Defendant Kia Motors Finance Company ("Defendant Kia" or "Kia") is a foreign corporation authorized to do business in the State of California, including in the Central District.

20.     Defendant Kia is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

22.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

### Plaintiff Obtains an Automobile Loan from Kia in October 2018

23.    In October 2018, Plaintiff sought financing for the purchase of a new 2018 Kia Sportage.

24.    On October 14, 2018, Plaintiff obtained an automobile loan from Kia, Account #2018100238**** ("the account").

25.    From October 2018 to the present, Plaintiff submitted timely monthly payments to Kia in the amount of $445.38.

### Kia Fails to Apply Plaintiff's Timely Payments to His Automobile Loan

26.    On February 24, 2020, Plaintiff submitted his timely payment to Kia for the month of February in the amount of $445.38. This payment was due on or before February 28, 2020.

27.    After receiving Plaintiff's timely payment, Kia misapplied said payment to a different Kia account unrelated to Plaintiff's account, and thereafter marked his February 2020 payment as delinquent.

28.    On or about April 8, 2020, Plaintiff received a past due notice from Kia stating, among other things, that he had a past due payment even though Plaintiff had timely made all monthly payments up to this point, including his February 2020 payment.

29.    On April 22, 2020, Plaintiff submitted his timely payment to Kia for the month of April in the amount of $445.38. This payment was due on or before April 28, 2020.

30.    After receiving Plaintiff's timely payment, Kia misapplied said payment to a different Kia account unrelated to Plaintiff's account and thereafter marked Plaintiff's April 2020 payment as delinquent.

31.     On or about May 8, 2020, Plaintiff once again received a past due notice from Kia even though Plaintiff had timely made all monthly payments up to this point, including his April 2020 payment.

32.     In May 2020, Plaintiff submitted his timely payment to Kia for the month of May in the amount of $445.38. This payment was due on or before May 28, 2020.

33.     After receiving Plaintiff's timely payment, Kia misapplied said payment to a different Kia account unrelated to Plaintiff's account and thereafter marked his May 2020 payment as delinquent.

34.     Unbeknownst to Plaintiff, Kia furnished inaccurate credit information regarding his Kia account, Account #2018100238****, to the national credit reporting agencies, Equifax, Experian, and Trans Union.

**Plaintiff Applies for a Student Loan with the Department of Education**

35.     On or about May 4, 2020, Plaintiff submitted a student loan application with the Department of Education to support his son's pursuit of higher education.

36.     On May 4, 2020, a representative of the Department of Education accessed Plaintiff's credit report from Trans Union. Plaintiff's Trans Union credit report indicated that Plaintiff's Kia auto tradeline, Account #2018100238****, was 30 days past due on one or more occasion in 2020.

37.     Defendant Trans Union violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code § 1786.20 by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of Plaintiff's report and the files it published and maintains.

38.     Plaintiff was shocked, frustrated, and embarrassed by this revelation, as he has never once missed or made a late monthly payment to Kia.

39.     As a direct result of the derogatory late payments contained in Plaintiff's Trans Union report, the Department of Education offered Plaintiff a much higher interest than he otherwise would have qualified for. Thus, instead of proceeding with the loan under Plaintiff's name, as originally planned, Plaintiff decided to put his son's

name on the student loan and have his wife co-sign, to avoid paying the high interest
rate he was offered.

### Plaintiff Applies for Credit to Refinance His Mortgage

40.    On or about May 27, 2020, Plaintiff sought to refinance his mortgage and
submitted a credit application with Covius Mortgage Solutions.

41.    On May 27, 2020, a representative of Covius Mortgage Solutions accessed
Plaintiff's credit reports from Equifax, Experian, and Trans Union. Equifax and Trans
Union were reporting Plaintiff's Kia auto tradeline, Account #2018100238****, as 30
days past due on one or more occasion in 2020. Experian was reporting Plaintiff's Kia
auto tradeline as 30 days past due in April 2020.

42.    Defendants Equifax, Experian, and Trans Union violated 15 U.S.C.
§ 1681e(b)and Cal. Civ. Code § 1786.20 by failing to establish or to "follow reasonable
procedures to assure maximum possible accuracy" in the preparation of Plaintiff's
reports and the files they published and maintain.

43.    Plaintiff was now even more frustrated by the fact that the credit bureau
defendants were still reporting the status of his Kia auto tradeline inaccurately, as he
has never once missed or submitted a late monthly payment to Kia.

44.    The representative informed Plaintiff that based on his current credit
scores, as published by Equifax, Experian, and Trans Union, the lowest rate Covius
Mortgage Solutions was able to offer him to refinance his mortgage was 3.375%.

45.    Fearing that this would be his best offer, Plaintiff agreed to the interest rate
despite it being much higher than he anticipated given his excellent credit history.

### Plaintiff Receives a Notice of Default from Kia

46.    On June 9, 2020, Plaintiff received a Notice of Default from Kia in the
amount of $1,781.52, which is equal to four missed payments.

47.    On or before June 23, 2020, annoyed and confused by the Notice of
Default, Plaintiff contacted Kia to dispute the inaccurate delinquent payments Kia had
reported to the credit bureau defendants.

48. A representative of Kia confirmed that Kia had received Plaintiff's timely monthly payments but discovered that for some reason a couple of his payments had not been properly attributed to his account. The representative then assured Plaintiff that Kia would immediately work on correcting the payment errors in its system.

49. Thereafter, Plaintiff continued to submit timely monthly payments to Kia pursuant to the terms of his automobile loan agreement.

50. Shortly thereafter, Plaintiff decided to independently review his credit reports from Equifax, Experian, and Trans Union, to determine whether the inaccuracies had been corrected. Much to Plaintiff's dismay, all three of his credit reports continued to inaccurately reflect late payments associated with his Kia auto tradeline.

**Plaintiff's First Dispute with Experian and Trans Union**

51. Between June 23, 2020 and June 27, 2020, Plaintiff submitted online disputes to Experian and Trans Union, disputing the inaccurate reporting of his Kia auto tradeline, Account #2018100238****. Specifically, Plaintiff disputed Experian's 30-day late designation for April 2020 and Trans Union's 30-day late designation.

**The Consumer Reporting Agencies' Method for Considering Consumer Credit Report Disputes**

52. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

53. Consumer reporting agencies such as Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

54.    That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."  It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

55.    Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

56.    Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

57.    The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

58.    These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

**Experian and Trans Union's Responses to Plaintiff's First Dispute**

59.    Experian sent an ACDV to Kia regarding Plaintiff's disputed Kia auto tradeline, Account #2018100238****.

60.    Kia instructed Experian to remove the late payment from April 2020, but Kia then inaccurately reported to Experian that Plaintiff had multiple 30-day late payments in June and July 2020.

61.    On July 13, 2020, Experian completed its reinvestigation of Plaintiff's dispute, which consisted of nothing more than parroting Kia's inaccurate reporting of late payments, and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation. Experian failed to correct Plaintiff's payment history in conjunction with his Kia auto tradeline and continued to report late payments on Plaintiff's Experian credit report.

62.    Trans Union sent an ACDV to Kia regarding Plaintiff's disputed Kia auto tradeline, Account #2018100238****.

63.    Kia incorrectly reported that Plaintiff had a 30-day late payment in June 2020 and furnished this inaccurate payment information to Trans Union.

64.    On July 22, 2020, Trans Union completed its reinvestigation of Plaintiff's dispute, which consisted of nothing more than parroting Kia's inaccurate reporting of the late payment and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation. Trans Union stated, "DISPUTE INFORMATION UPDATED." Trans Union failed to correct Plaintiff's payment history in conjunction with his Kia auto tradeline and continued to report late payments on Plaintiff's Trans Union credit report.

65.    Defendants Experian and Trans Union failed to conduct a reasonable reinvestigation of the credit account disputed by Plaintiff, in violation of 15 U.S.C. § 1681i(a)(1)(A) and Cal. Civ. Code § 1786.24.

66.    Defendant Kia violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to remove all inaccurate late payments and communicate the same to Experian and Trans Union.

### Plaintiff's First Dispute with Equifax and Second Disputes with Experian and Trans Union

67.    Between July 2020 and September 2020, unsatisfied with the results of his first disputes, Plaintiff placed telephone calls to Experian and Trans Union, disputing the inaccurate reporting of his Kia auto tradeline, Account #2018100238****.

68.    Plaintiff also placed a telephone call to Equifax to dispute the inaccurate reporting on his Kia automobile tradeline, Account #2018100238****.

69.    Specifically, Plaintiff disputed the 30-day late payments Experian was reporting for June and July 2020, the 30-day late payment Equifax was reporting for May 2020, and the 30-day late payment Trans Union was reporting for June 2020.

### The Credit Bureau Defendants' Responses to Plaintiff's Disputes

70.    Equifax sent an ACDV to Kia regarding Plaintiff's disputed Kia auto tradeline, Account #2018100238****.

71.    Kia removed the late payments from Account #2018100238**** and instructed Equifax to remove the late payments from Plaintiff's credit report.

72.    On September 14, 2020, Equifax completed its reinvestigation of Plaintiff's dispute and removed the late payments from Account #2018100238****.

73.    Experian sent an ACDV to Kia regarding Plaintiff's disputed Kia auto tradeline, Account #2018100238****.

74.    Kia removed the late payments from Account #2018100238**** and instructed Experian to remove the late payments from Plaintiff's credit report.

75.    On September 14, 2020, Experian completed its reinvestigation of Plaintiff's dispute and removed the late payments from Account #2018100238****.

76.    Trans Union sent an ACDV to Kia regarding Plaintiff's disputed Kia auto tradeline, Account #2018100238****.

77.    Kia removed the late payments from Account #2018100238**** and instructed Trans Union to remove the late payments from Plaintiff's credit report.

78.    On September 14, 2020, Trans Union completed its reinvestigation of Plaintiff's dispute and removed the late payments from Account #2018100238****.

79.    As a standard practice, the credit bureau defendants do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

80.     Consistent with their standard policies and procedures, the credit bureau defendants automatically generated their "investigation" results once the furnisher, Kia, provided its responses to Plaintiff's disputes, verifying the status of the account as previously and inaccurately reported, and no employee of any of the credit bureau defendants took any additional steps after Kia provided its responses to Plaintiff's numerous disputes.

81.     Instead, the credit bureau defendants blindly accepted Kia's incomplete version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit reports.

82.     The credit bureau defendants continue the practice of parroting the response from furnishers even though they have been repeatedly sued for failing to conduct reasonable reinvestigations of consumers' credit disputes as required by the FCRA.

83.     The credit bureau defendants do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

84.     Instead, the credit bureau defendants intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the credit bureau defendants' violations of the FCRA are willful.

85.     As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage in the form of being offered and having to pay higher credit interest rates; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of having inaccurate late payments on his credit reports.

# CLAIMS FOR RELIEF

## COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedure to Assure Maximum Possible Accuracy
### (First Claim For Relief Against Defendants Equifax, Experian, and Trans Union)

86. Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-84 of this Complaint, as if fully stated herein.

87. Defendants Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintains concerning Plaintiff.

88. As a result of Defendants Equifax, Experian, and Trans Union's conduct, action, and inaction, Plaintiff suffered damage in the form of being offered and having to pay higher credit interest rates; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of having inaccurate late payments on his credit reports.

89. Defendants Equifax, Experian, and Trans Union's conduct, action, and inaction was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

90. Plaintiff is entitled to recover attorney's fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

/

/

/

/

**COUNT II**
**Cal. Civ. Code § 1786.20**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(Second Claim For Relief Against Defendants Equifax, Experian, and Trans Union)**

91.     Plaintiff relies on the factual allegations contained within Paragraphs 1-84 of this Complaint, as if fully stated herein.

92.     Defendants Equifax, Experian, and Trans Union are "investigative consumer credit reporting agencies" as defined by Cal. Civ. Code § 1786.2(d).

93.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by Cal. Civ. Code § 1786.2(b).

94.     The above-mentioned credit reports are "investigative consumer reports" as that term is defined by Cal. Civ. Code § 1786.2(c).

95.     Defendants Equifax, Experian, and Trans Union negligently and willfully failed "to follow reasonable procedures to assure maximum possible accuracy" in preparing Plaintiff's credit reports. Cal. Civ. Code § 1786.20(b).

96.     Pursuant to Cal. Civil Code § 1786.50, Plaintiff is entitled to his actual damages, injunctive relief, statutory damages, punitive damages, costs, and attorneys' fees.

**COUNT III**
**15 U.S.C. § 1681i**
**Failure to Perform Reasonable Reinvestigation**
**(Third Claim For Relief Against Defendants Experian and Trans Union)**

97.     Plaintiff re-alleges and incorporates the allegations set forth within Paragraphs 1-84 of this Complaint, as if fully stated herein.

98.     Defendants Experian and Trans Union violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after it received notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to Kia; by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

99.    As a result of Defendants Experian and Trans Union's conduct, action, and inaction, Plaintiff suffered damage in the form of being offered and having to pay higher credit interest rates; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of having inaccurate late payments on his credit reports.

100.   Defendants Experian and Trans Union's conduct, action, and inaction was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

101.   Plaintiff is entitled to recover attorney's fees and costs from Defendants Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT IV
### Cal. Civ. Code § 1786.24
### Failure to Perform Reasonable Reinvestigation
### (Fourth Claim For Relief Against Defendants Experian and Trans Union)

102.   Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-84 of this Complaint, as if fully stated herein.

103.   Defendants Experian and Trans Union violated Cal. Civ. Code § 1786.24 by failing to delete inaccurate information in Plaintiff's credit file after they received notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to Kia; by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a source they have reason to know is unreliable.

104.   Pursuant to Cal. Civil Code § 1786.50, Plaintiff is entitled to his actual damages, injunctive relief, statutory damages, punitive damages, costs, and attorneys' fees.

-14-

**COUNT V**
**15 U.S.C. § 1681s-2(b)**
**Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer Against Kia**
**(First Claim For Relief Against Defendant Kia)**

105.   Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-84 of this Complaint, as if fully stated herein.

106.   Defendant Kia published the negative entries to Defendants Equifax, Experian, and Trans Union.

107.   Defendant Kia violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes of its inaccurate representations; by failing to review all relevant information regarding the same; by failing to accurately respond to Defendants Equifax, Experian, and Trans Union; by failing to correctly report results of an accurate investigation to Defendants Equifax, Experian, and Trans Union; and by failing to permanently and lawfully correct its own internals records to prevent the re-reporting of its inaccurate representations to Defendants Equifax, Experian, and Trans Union.

108.   As a result of Defendant Kia's conduct, action, and inaction, Plaintiff suffered damage in the form of being offered and having to pay higher credit interest rates; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of having inaccurate late payments on his credit reports.

109.   Defendant Kia's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

110.    Plaintiff is entitled to recover attorney's fees and costs from Defendant Kia in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a. For declaratory judgment that Defendants negligently and/or willfully violated the FCRA and ICRAA as alleged herein;

b. For preliminary, permanent, and mandatory injunctive relief prohibiting Defendants, their officers, agents, and all those acting in concert with them, from committing in the future those violations of law herein alleged;

c. For an order awarding Plaintiff actual damages, including all out-of-pocket loss and all other sums of money owed to Plaintiff, together with interest on these amounts, according to proof;

d. For non-economic damages due to Plaintiff's pain and suffering;

e. For compensatory, statutory, and punitive damages, as provided by the FCRA and ICRAA, according to proof;

f. For attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o, and Cal. Civ. Code § 1786.50;

g. Costs of suit; and

h. Such other injunctive and equitable relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

111.    Plaintiff demands a trial by jury.

COMPLAINT
Case No. 22-cv-00271

| | |
|---|---|
| 1 | Dated: February 21, 2022 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

Dated:  February 21, 2022

Respectfully submitted,


By:  /s/ Sophia M. Rios
Sophia M. Rios, (SBN 305801)
**BERGER MONTAGUE PC**
401 B Street, Suite 2000
San Diego, CA 92101
Telephone: (619) 489-0300
srios@bm.net

Sylvia Bolos*, MI Bar #78715
Hans Lodge*, MN Bar #0397012
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 284-5193
Facsimile: (612) 584-4470
sbolos@bm.net
hlodge@bm.net
*Pro Hac Vice to be requested*

*Attorneys for Plaintiff*

-17-